

LIFE AFTER HATE, INC., a/k/a EXIT USA,

*Plaintiff/Counter-Defendant*,

v.

FREE RADICALS PROJECT, INC., and CHRISTIAN PICCIOLINI,

*Defendants/Counter-Plaintiffs*.

CHRISTIAN PICCIOLINI,

*Third-Party Plaintiff*,

v.

TONY MCALEER, SAMMY RANGEL, ANGELA KING and FRANK MEEINK,

*Third-Party Defendants*.

No. 18 C 6967

Hon. Virginia M. Kendall

**MEMORANDUM OPINION AND ORDER**

Plaintiff Life After Hate, Inc. ("LAH") brought this suit against Defendants Christian Picciolini and Free Radicals Project, Inc. ("FRP") (together "the Picciolini Defendants"). LAH states in its First Amended Complaint that one of LAH's co-founders, Picciolini, left LAH and started the competing organization Free Radicals Project and began to infringe upon LAH's registered trademarks. (Dkt. 23). LAH brings claims against Picciolini and FRP for trademark infringement and counterfeiting, tortious interference with a business expectancy, deceptive trade and business practices, cybersquatting, conversion, unjust enrichment, and breach of fiduciary duty. (*Id.*). LAH moved for a preliminary injunction to prevent Picciolini

and FRP from using LAH's trademarks, which was entered on September 30, 2019. (Dkt. 137). Picciolini and FRP answered LAH's complaint and brought counterclaims against LAH and four individual third-party defendants who are affiliated with LAH, Tony McAleer, Sammy Rangel, Angela King, and Frank Meeink, for a variety of claims. (Dkt. 35). LAH and the third-party defendants then moved to dismiss Picciolini and FRP's claims in their entirety. (Dkt. 92). The Court granted the motion to dismiss in part and denied it in part. (Dkt. 121).

Picciolini and FRP then filed an Amended Counter-Complaint ("ACC") against LAH and third-party defendants Tony McAleer, Sammy Rangel, Angela King, and Frank Meeink. (Dkt. 128). The ACC alleges copyright infringement, violation of right of publicity, unfair competition, unjust enrichment, and deceptive trade practices against LAH; claims against LAH, McAleer, Rangel, King and Meeink for tortious interference with a business expectancy and conspiracy; and claims against LAH, McAleer, Rangel, and Meeink for defamation/disparagement. (Dkt. 128).[1]

LAH and the third-party defendants (which the Court will jointly refer to here as "LAH") now move to dismiss Counts II, III, IV, VI, VII, part of VIII, and IX of Picciolini and FRP's ACC, arguing that all claims fail to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and that Count IV, VI, and IX are preempted by the Copyright Act. (Dkt. 142).

[1] Picciolini and FRP re-plead Count V for Conversion for the purposes of preservation for appeal. (Dkt. 128 at 23). The Court dismissed Count V with Prejudice and so will not discuss this count. (Dkt. 121 at 9).

## BACKGROUND

This Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The facts below are drawn from Picciolini and FRP's ACC (Dkt. 128) and are accepted as true. *See Vinson v. Vermillion Cty., Ill.*, 776 F.3d 924, 925 (7th Cir. 2015). The Court assumes familiarity with the facts of this case, as the Court held a multi-day evidentiary hearing and recently provided a detailed background in *Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2019 WL 2644237 (N.D. Ill. June 27, 2019). Therefore, only a brief summary is needed here.

Picciolini is a former white supremacist who renounced all ties to white-supremacist groups and racism. (Dkt. 128 ¶ 13-14). In 2009, Picciolini co-created and co-founded LAH with Arno Michaelis. (*Id.* ¶ 17). At that time, he began using "Life After Hate" as a name for a platform and his services advocating against hate and extremist groups, in the hopes that members of those groups would renounce their ties as Picciolini and Michaelis had. (*Id.*). In January 2010, Picciolini and Michaelis launched the websites lifeafterhate.org and kindnessnotweakness.org to support LAH. (*Id.* ¶ 19). In 2011, Picciolini and Michaelis invited the four individual third-party defendants to join LAH as volunteers. (*Id.* ¶ 22). Three of the individuals later became members of LAH's Board. (*Id.*). In August 2012, Picciolini stepped down

from his position as LAH Board Chair but remained a member of the Board. (*Id.* ¶ 23).

In 2014, Picciolini created, established, and used the "ExitUSA" trademark as part of the exit program he developed and operated through LAH. (*Id.* ¶ 30). In or about June 2014, he launched "ExitUSA" on various social media platforms. (*Id.* ¶ 31). As part of his efforts to develop the program, Picciolini sought to personally purchase the domain name ExitUSA.org. (*Id.* ¶ 32). In January 2015, Picciolini learned that someone else already owned the domain name and so he negotiated the purchase of the domain name from the original owner. (*Id.* ¶ 33). In March 2015, Picciolini personally redesigned LAH's website, logo, marketing materials, videos, and website content, which LAH continues to use. (*Id.* ¶ 35). In 2017, Picciolini redeveloped, redesigned, and relaunched the "ExitUSA" website. (*Id.* ¶ 42).

In April 2017, LAH members decided to separate the operations and programs of ExitUSA from LAH. (*Id.* ¶ 65). They agreed to establish ExitUSA as a subsidiary corporation of LAH to be operated by Picciolini, who was already overseeing and providing LAH's counseling services and programs. (*Id.*).

Picciolini created numerous works of authorship using his personal resources while he was associated with LAH. (*Id.* ¶ 50). Five of those works are federally registered copyrighted works, with the following titles: Oak Creek Video, There is life after hate Video, the Formers Video, Life After Hate Fund Raising Video (together, the "Picciolini Videos")[2], Life After Hate Website, and Life After Hate logo

[2] The ACC alleges a new video entitled the Life After Hate Fund Raising Video, which is not copyrighted by Picciolini. (Dkt. 128 ¶ 52).

(together with the Copyrighted Videos, the "Picciolini Copyrights").[3] (*Id.* ¶ 52). Picciolini created and produced each of the Picciolini Copyrights with his own money LAH did not employ Picciolini to create the Picciolini Copyrights. (*Id.* ¶¶ 53-54). Picciolini allowed LAH to use his copyrights while he was associated with LAH, but since his disassociation, LAH has not had authorization to use or publish the Picciolini Copyrights. (*Id.* ¶¶ 55-56).

**LEGAL STANDARD**

On a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

---

[3] The Complaint includes the registration numbers for the Picciolini Videos and the Life After Hate Website. (Dkt. 128 ¶ 52.)

## DISCUSSION

As in the first motion, LAH argues that some of Picciolini and FRP's claims are preempted by the Copyright Act. They additionally argue that all claims otherwise fail to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

### I. Copyright Act Preemption

Count I of the ACC alleges that LAH infringed Picciolini's copyrights in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501. (Dkt. 128 ¶¶ 73-81). LAH, in their Motion to Dismiss, argues that the Copyright Act claim preempts three claims: Count IV (Unjust Enrichment), VI (Tortious Interference with a Business Expectancy), and IX (Deceptive Trade Practices). (Dkt. 142 at 7-10).

As discussed in this Court's initial memorandum, the Copyright Act preempts state law claims if two elements are met: (1) "the work in which the right is asserted must be fixed in tangible form and come within the subject matter of the copyright as specified in § 102," and (2) the rights in the state-law claims "must be equivalent to the exclusive rights under the Copyright Act." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500-01 (7th Cir. 2011) (citing 17 U.S.C. § 301a). "To avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—i.e., conduct other than reproduction, adaptation, publication, performance, and display." *Id.* at 501 (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2011)). A state-law right is equivalent even if it requires additional elements to make out a cause of action, if those "additional

elements do not differ in kind from those necessary for copyright infringement." *Carter v. Pallante*, 256 F. Supp. 2d 791, 803 (N.D. Ill. 2017) (quoting *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 677 n.26 (7th Cir. 1986).

Picciolini and FRP again do not dispute that the first element is met here. They argue, however, that the second element is not met as to each claim at issue because each claim is based on elements qualitatively different than Copyright Infringement. (Dkt. 153 at 3-7). As before, the Court will consider whether each state law claim subject to dismissal is based on a right equivalent to those under the Copyright Act.

**a. Unjust Enrichment (Count IV)**

Count IV alleges unjust enrichment. Picciolini and FRP allege that LAH received contributions from donors under the mistaken belief, fostered by LAH, that Picciolini was still associated with the organization. (Dkt. 128 ¶ 109). Picciolini and FRP allege that LAH accomplished this by "concealing that Picciolini had disassociated from LAH" and "fostering the belief that Picciolini is still associated with LAH by the use of his identity and the Picciolini Copyrights after Picciolini's disassociation..." (*Id.*) The unjust enrichment claim is at least in part, on LAH's alleged use of the Picciolini Copyrights, which this Court previously dismissed without prejudice because "that conduct is not qualitatively different from the conduct proscribed by the Copyright Act" and "because the only facts Picciolini and FRP allege to support their claim that LAH used Picciolini's likeness involve LAH's alleged use of the Picciolini Copyrights." (Dkt 121 at 8). However, Picciolini and FRP

allege that the use of Picciolini's likeness is no longer limited to the Picciolini Copyrights and discuss a Life After Hate Fund Raising video wherein Picciolini appears. (Dkt. 153 at 5-6). Picciolini and FRP argue that because the Fund Raising Video is not a part of the Picciolini Copyrights, it should not be subject to preemption by Picciolini's copyright infringement claims against LAH. (*Id.* at 5). LAH argue that Picciolini and FRP base their claim for copyright infringement in Count I off of LAH's purported use of all of the Picciolini Copyrights and Picciolini videos, which they state are defined in the ACC to include the Fund Raising Video. (Dkt. 158 at 5).

The Court disagrees with this argument. First, Picciolini and FRP only group the Fund Raising Video in with other videos featuring Picciolini. (Dkt. 128 ¶ 74-81). Nowhere do Picciolini and FRP characterize the Fund Raising Video as being part of the Picciolini Copyrights, which are defined as "The Oak Creek Video," "There is life after hate Video," "The Formers Video," and the "Life After Hate Website." (*Id.* ¶ 52.).

Additionally, LAH argues in a footnote that although the Fund Raising Video is unregistered, it can still fall within the purview of the preemption analysis. (Dkt. 158 at 5, FN 2 (citing *Seng-Tiong Ho*, 648 F.3d at 501 ("The Copyright Act can preempt state law even when the rights are claimed in uncopyrighted or uncopyrightable materials."))). However, this argument does not prevail. As explained in *Seng-Tiong Ho*, "in the Copyright Act, Congress sought to ensure that a state will not provide 'copyright-like protections in materials' that should remain uncopyrighted or uncopyrightable." *Id.* Further, in *Tomey,* the Seventh Circuit explained that "*Baltimore Orioles* holds that state laws that intrude on the domain of

copyright are preempted even if the particular expression is neither copyrighted nor copyrightable. Such a result is essential in order to preserve the extent of the public domain established by copyright law. Therefore, states may not create rights in material that was published more than 75 years ago, even though that material is not subject to federal copyright." *Tomey,* 406 F.3d 905, 911 (7th Cir. 2005). Precedent makes clear that the issue is not whether something has been copywritten or not to be subject to preemption, but rather that the State does not intrude into the federal purview and does not create a state right for material that is not copyrightable under federal law. Here, while the Fund Raising video is unregistered, this is not because it is otherwise uncopyrightable material. It could be subject to the Copyright Act if it were registered, however, it is not. This does not get at the policy considerations surrounding the claim that the Copyright Act can preempt state law even when the rights are claimed in uncopyrighted or uncopyrightable materials. Thus, while the Copyrighted Videos are preempted, the Fund Raising Video is not preempted.

Additionally, as before, Picciolini and FRP argue that their unjust enrichment claim, including the Copyrighted Videos, is not entirely preempted because it also relies on the allegation that LAH concealed the fact that Picciolini was no longer associated with the organization. (Dkt. 128 ¶ 109 -112). Picciolini and FRP again argue that this concealment is qualitatively different from conduct regulated by federal copyright law. The Court once again agrees, so this aspect of their unjust enrichment claim survives preemption. *See, e.g., Cambridge Grp. Techs., Ltd. v. Motorola, Inc.*, No. 12 C 7945, 2013 WL 842650, at *4 (N.D. Ill. March 5, 2013)

(collecting cases.) However, as the Court discusses below, the claim, while not preempted, is dismissed for failing to plead with particularity in accordance with FRCP 9(b).

**b. Tortious Interference with a Business Expectancy (Count VI)**

Count VI alleges tortious interference with a business expectancy. Picciolini and FRP allege that LAH interfered with business relationships through their "defamation, illegal use of Picciolini's identity and violation of Picciolini's right of publicity, their unfair competition, unjust enrichment, infringement, tortious interference and deceptive trade practices." (Dkt. 128 ¶ 124). As discussed by this Court in its first Memorandum, "to the extent the tortious interference claim relies on LAH's alleged copyright infringement, that conduct is qualitatively different from that governed by copyright law." (Dkt. 121 at 9 (citing *Carter*, 256 F. Supp. at 806)).

The Picciolini Defendants once again rely upon the Fund Raising Video. (Dkt. 153 at 7). As discussed above, to the extent that Picciolini and FRP rely upon the Copyrighted videos, the claim is preempted by the Copyright Act. However, as the Fund Raising Video is not copyrighted material, it is not preempted. LAH again does not argue that the remaining aspects of the tortious interference claim (namely those based upon the alleged defamation, illegal use of Picciolini's identity and violation of Picciolini's right of publicity, their unfair competition, unjust enrichment, infringement, tortious interference and deceptive trade practices) are preempted. As discussed below, however, these remaining claims are dismissed for failure to state a claim for relief.

**c. Deceptive Trade Practices (Count IX)**

Count IX alleges deceptive trade practices. The Picciolini Defendants allege that LAH engaged in deceptive trade practices: "causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification Picciolini; by representing that its services have sponsorship or approval by Picciolini, when they do not; and by disparaging the services of Picciolini by false or misleading representations of fact." (Dkt. 128 ¶ 156). Additionally, Picciolini and FRP assert that after Picciolini's departure from LAH, LAH continued to affirmatively foster the false belief that Picciolini was still with LAH, including by use of the Picciolini Copyrights and Picciolini Videos, and by concealment of his departure and that "donors have made contributions to LAH under false pretenses due to their mistaken belief that Picciolini was still associated with LAH, when their intent was to support Picciolini's anti-hate efforts, including at FRP." (*Id.* at ¶ 157). Again, to the extent that this claim relies upon use of the Picciolini Copyrights, this claim is preempted for the reasons discussed by the court in its initial memorandum. (Dkt. 121 at 10 (stating that courts routinely find that deceptive trade practices claims based on alleged use of copyrighted materials are preempted by the Copyright Act and citing *Defined Space, Inc. v. Lakeshore East, LLC*, 797 F. Supp. 2d 896, 902-03 (N.D. Ill 2011)). Picciolini and FRP provide a much more robust description of the alleged deceptive trade practices than in their first countercomplaint. (Dkt. 35 ¶ 132-134). They no longer rely solely upon the Picciolini Copyrights and now allege that LAH has concealed his departure and that donors have made contributions to LAH under

false pretenses due to their mistaken belief that Picciolini was still associated with LAH. (*Id.* at ¶ 157).

LAH does not respond to these new allegations, instead pointing out that the Court previously found the first two allegations preempted and then states that "any elaboration as to 'disparagement,' are exclusively based upon LAH's alleged use of the Picciolini Copyrights and Picciolini Videos." (Dkt. 142 at 10). As stated above, the Fund Raising video is not preempted by the Copyright Act, however, for reasons discussed below, the claim is dismissed for failure to state a claim.

## II. Rule 12(b)(6) and 9(b)

### a. Right of Publicity (Count II)

Count II alleges a violation of the Illinois Right of Publicity Act (IRPA), which provides that a person "may not use an individual's identity for commercial purposes…without having obtained previous written consent." 765 ILCS 1075/30(a). A plaintiff must set forth three elements to allege a claim for appropriation of likeness under IRPA, which are as follows: "(1) an appropriation of one's name or likeness; (2) without one's consent; and (3) for another's commercial benefit." *See Jordan v. Jewel Food Stores, Inc.*, 83 F. Supp. 3d 761, 767 (N.D. Ill 2015) (citing *Blair v. Nev. Landing P'Ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006)).

The Court previously dismissed this claim for being a formulaic recitation and stating that the fact that Picciolini and FRP identify the videos is not enough. (Dkt. 121 at 12). The Court stated that Picciolini and FRP "recite the elements of the cause of action and provide no other detail whatsoever to show how Picciolini's likeness was

appropriated. (*Id.*). In contrast with their first countercomplaint, in the amended countercomplaint, plaintiffs allege sufficient information. Picciolini states that LAH has misappropriated "Picciolini's name, likeness, image, and voice in connection with its publication of certain of the Picciolini Copyrights, including the Picciolini Videos, for their own commercial purposes and fundraising efforts." (Dkt. 128 ¶ 83). Picciolini describes the videos, primarily the Life After Hate Fund Raising Video, as including "video images of Picciolini at various ages; audio of Picciolini speaking on his beliefs and (then) current purposes of LAH; identifying himself as a founder of LAH; stating his affiliation with LAH in the present tense; referring to himself and LAH as "we"; describing himself as one of the members of LAH currently acting and working with LAH; and specifically seeking donations for LAH." (*Id.* at ¶ 84).

LAH does not dispute that the elements of the IRPA claim, appropriation of one's name or likeness without one's consent for another's commercial benefit, are met here. LAH instead argues that all the Picciolini videos are public service announcements and are thus exempt. (Dkt. 158 at 6). LAH cites to the "news" or "public affairs" exemption of the IRPA under 765 ILCS 1075/35(b)(2). (*Id.*). Picciolini, in turn, does not dispute that the Fund Raising Video falls within this exemption, but states that this argument falls short as "it fails to address the Fund Raising Video, which is clearly intended for the specific commercial purpose of obtaining donations to financially support LAH's operations." (Dkt. 153 at 9). Picciolini does not cite a case to support this statement. LAH cites several cases wherein a broadcast fell within the exceptions and thus remained exempt, even if it also is used for commercial

purposes.[4] (Dkt. 158 at 6-7 (citing, among other cases, *Best v. Berard*, 776 F.Supp.2d 752, 754-55 (N.D. Ill 2011) where plaintiff sued television network for violation of IRPA after showing her arrest on a reality police show without consent but was subject to public affairs exception despite being broadcast for commercial purpose). The Court agrees that the Fund Raising Video falls within this exemption. Count II is dismissed due to this failure to state a violation of the Right of Publicity.

**b. Unfair Competition – Lanham Act (Count III)**

Count III alleges that LAH used Picciolini's name and reputation to misrepresent the nature of its services in violation of the Lanham Act, 15 U.S.C. § 1125. The Court previously dismissed these claims for failing to allege sufficient facts. (Dkt. 121 at 13-14). LAH asserts that, once again, these claims should be dismissed since the only new facts alleged by the Picciolini and FRP is that LAH's continued use of the Picciolini Copyrights give the false impression that Picciolini is affiliated with LAH. (Dkt. 142 at 11-12). They state that "merely alleging that unlawful use of copyrighted material is a false designation of origin of the copyrighted work itself does not state a claim under the Lanham Act." (*Id*. at 12 (citing *Dastar Corp. v. Twentieth Cent. Fox*, 539 U.S. 23, 34-25 (2003)).

LAH misstates what the Picciolini and FRP claim. Picciolini and FRP are not alleging that confusion is arising due to the origin of the Picciolini videos or the failure to attribute Picciolini as the author or creator of the videos, but rather that the

[4] Commercial purpose" under the IRPA means "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *See Jordan v. Jewel Food Stores, Inc*., 83 F. Supp. 3d 761, 767 (N.D. Ill 2015) 765 ILCS 1075/5.

continued use of the Picciolini videos and his appearance in the videos is giving rise to confusion, such that it is leading donors to give money to LAH instead of FRP. This is a different premise than what LAH argues, and thus the line of precedent they cite is inapplicable.

Thus the remaining question again is whether the Picciolini Defendants have pled sufficient facts for a claim under the Lanham Act: "[t]o establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir. 1999). The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *Eli Lilly and Company v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018). When the statement in question is actually false, the "plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Id.* However, when the statement

is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrated actual consumer confusion. *Id.*

Here, FRP and Picciolini have pled sufficient facts to give rise to a Lanham Act violation. The false statements in question falls into the second category of "claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Eli Lilly*, 893 F.3d at 382. Here, the Picciolini Defendants that the LAH's use of the videos give rise to the impression that Picciolini was still affiliated with LAH after his departure from LAH and caused donors to donate while under this misimpression. (Dkt. 128 at ¶¶ 102 -103). The Picciolini Defendants state that by publishing on LAH's website, LAH caused the deceptive statements to enter into interstate commerce and have shown injury. (*Id.* at ¶¶ 104-107). Because the Picciolini Defendants have pled sufficient facts to show an Unfair Competition claim under the Lanham Act, the Motion to Dismiss on this claim is denied.

**c. Unjust Enrichment (Count IV)**

Picciolini and FRP allege that LAH received contributions from donors under the mistaken belief that Picciolini was still associated with LAH, which was accomplished "not only by concealing that Picciolini had disassociated from LAH, but also fostering the belief that Picciolini is still associated with LAH by the use of his identity and the Picciolini Copyrights after Picciolini's disassociation." (Dkt. 128 ¶ 109). LAH repeats their arguments that Picciolini and FRP's claim for unjust enrichment in Count IV is preempted by the Copyright Act. (Dkt. 142 at 12). They

further state that for portions of the claim based upon fraud not based on use of the Picciolini Copyrights there are no facts pled with the requisite particularity and specificity under Rule 9(b).

The Court agrees. As before, as before the claims based on the Picciolini Copyrights are preempted. The remaining claims do not meet the heightened standards of Rule 9(b), i.e. the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441, 47-48 (7th Cir. 2011). As before, Picciolini and FRP do not plead sufficient facts about the who, what, when, where and how of the unjust enrichment claim. The facts as pled are essentially the same as in the first complaint with no additional detail to give rise to an inference of the who, what, when, where and how the alleged fraud was occurring. As such, the Picciolini Defendants have failed to plead with specificity to meet the heightened 9(b) standards and the claim is dismissed.

**d. Tortious Interference with a Business Expectancy (Count VI)**

As before, Count VI alleges that LAH intentionally interfered with Picciolini and FRP's business relationships with "contacts, potential donors, and entities that make grants." (Dkt. 128 at ¶ 122). Picciolini and FRP allege that LAH interfered through "their defamation, illegal use of Picciolini's identity and violation of Picciolini's right of publicity, their unfair competition, unjust enrichment, infringement, tortious interference and deceptive trade practices. (*Id.* ¶ 124). As stated in the previous Motion to Dismiss, the elements for a claim of intentional interference with a prospective economic advantage are: "(1) a reasonable expectancy

of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686 (7th Cir. 2014) (citation omitted). "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." *Id.* (citation omitted).

LAH states that the claim remains deficient as "there are no allegations as to how LAH affirmatively took steps to direct actions towards any third-party which would give rise to a claim." (Dkt. 142 at 13). As an initial matter, to the extent that the claims rely on the Copyrighted Videos, the claims are preempted. This leaves the Fund Raising Video. The Picciolini Defendants claim that they have identified the category of third parties with whom their business relationship was interfered, namely the donors, contacts and entities that make grants. (Dkt. 153 at 11). The Picciolini Defendants allege that the affirmative action that tortuously interfered with their presumptive business relationship was publishing the Fund Raising Video on YouTube. (*Id.*).

The Picciolini Defendants do not plead sufficient facts to survive a motion to dismiss. First, the Picciolini Defendants do not show a reasonable expectation of entering into a business relationship with its claimed third parties. The Picciolini Defendants claim in their reply that "the continued use of the Fund Raising Video specifically targets any and all past and potential donors that would make

contributions to an organization due to Picciolini's involvement," but unnamed potential donors who might potentially give money do not give rise to the type of reasonable expectation needed for this claim. *See e.g. Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems*, 428 F.3d 706, 716 (7th Cir. 2005) (third parties contacted by a cellular telephone company were not shown to be long-standing customers of plaintiffs); *System Development Integration, LLC v. Computer Sciences Corp.*, 739 F.Supp.2d 1063, 1082-83 (N.D. Ill. 2010) (denying tortious interference with prospective business advantage because plaintiff could not show interference with a "long-term" business relationship with third party and a lack of concrete agreements).

Further problematic is that the Picciolini Defendants cannot show an intentional and unjustified interference by LAH that induced or caused a breach or termination of the expectancy. The only affirmative action that the Picciolini Defendants allege is that LAH published the Fund Raising Video on YouTube, however, they do not point how this was specifically directed towards the third parties they claim were impacted. (Dkt. 153 at 11). Nor can they point to how a refusal to disclose of Picciolini's departure was an affirmative intentional, unjustified interference directed towards third parties. For example, they do not point to LAH sending emails with the YouTube links to contacts, potential donors, and entities that make grants, claiming that Picciolini still works for them, which could give rise to this inference. Passively uploading the videos to YouTube and allegedly not taking them down after Picciolini's departure where potential donors, contacts and entities

that make grants may see them is not the type of affirmative action that needs to be alleged in order to survive a motion to dismiss for tortious interference. *Unique Envelope Corp. v. GSAmerica, Inc.,* 2002 WL 598511,*4 (N.D. Ill. Apr. 18, 2002) (to state a claim, a plaintiff must allege "action by the interfering party directed toward the party with whom the plaintiff expects to do business"); *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy,* 826 N.E.2d 1160, 1169 (Ill. 2005) ("A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party."). Further, Exhibit E, which is referenced in the Picciolini Defendant's reply, but not in Count VI of their Complaint, does not show that LAH purposefully interfered, but rather that, if anything, the donor was passively influenced by a video he saw online. For these reasons, Count VI is dismissed.

**e. Conspiracy (Count VII)**

Count VII alleges that LAH conspired to remove Picciolini from LAH's Board so that he could be terminated and LAH could then "take possession of the funds raised by Picciolini," and convert and use the Life After Hate and ExitUSA trademarks, the ExitUSA.org domain name, and the Picciolini Copyrights. (Dkt. 128 ¶ 131).

As before, the conspiracy claim is based on other claims alleged here—defamation, unjust enrichment (to the extent the claim relies on LAH's having "take[n] possession of the funds raised by Picciolini,"), and right of publicity. As discussed above, Picciolini and FRP fail to state claims for unjust enrichment and

right of publicity, so the claim cannot rest upon this. However, a portion of the Picciolini's Defamation claim stands. The Picciolini Defendants cannot make out a claim for conspiracy. Under Illinois law, the elements of civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Huon v. Breaking Media, LLC*, 75 F.Supp.3d 747, 773-774 (N.S. Ill. 2014) (citing *Fritz v. Johnston,* 807 N.E.2d 461, 470 (2004)). Here, the Picciolini Defendants' claim fails because the claim that LAH, McAleer, Rangel, King, and Meeink conspired is deficient.

In order to plead conspiracy, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Fritz*, 837 N.E.2d at 471. To be liable for civil conspiracy in Illinois, a defendant must understand "the general objectives of the conspiratorial scheme, accept[ ] them, and agree[ ], either explicitly or implicitly to do its part to further those objectives...." *LoggerHead Tools, LLC v. Sears Holding Corporation*, 19 F.Supp.3d 775, 784 (N.D. Ill. 2013) (citing *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill.1994)). Here, the Picciolini Defendants have not pled the existence of an agreement nor that LAH, McAleer, Rangel, King, and Meeink were acting in concert. They merely conclusory state that there was a conspiracy to defame Picciolini and remove him from the LAH Board so as to take possession of the funds raised by Picciolini but give no further facts to even give rise

to the inference of a conspiracy. This is not sufficient. For the foregoing reasons, LAH's Motion to Dismiss on this count is granted.

**f. Defamation/Disparagement (Count VIII)**

The Court previously denied the Motion to Dismiss against third-party defendants Rangel and Meeink but granted it without prejudice only as to third-party defendant McAleer, stating that his alleged statements were nonactionable opinions. (Dkt. 121 at 24). The Court stated that "Rangel's alleged statement that he was going to 'kick Picciolini's ass' is 'loose, figurative language that no reasonable person would believe presented facts,' which is not actionable," but failed to outright state that this specific claim was dismissed. (*Id.* at 23 (citing *Coghlan v. Beck*, 984 N.E.2d 132, 145 (Ill. App. Ct. 2013)). The third-party defendants move to dismiss this portion of the complaint. (Dkt. 142 at 15). Picciolini, in turn, focuses on the McAleer portion of defamation claim, which were previously dismissed by the Court, stating that they have re-pled with substantial allegations. (Dkt. 153 at 12).[5] However, the third-party defendants only move to dismiss the statement by Rangel that he was going to "kick Picciolini's ass," stating that the Picciolini has "inexplicably" re-pled this claim.

[5] The Court previously dismissed the defamation claims against McAleer, writing" McAleer's alleged statement that Picciolini 'stole anti-hate stories and narratives from him and passed them off as Picciolini's own' does not provide enough context to rise to the level of a fact. The statement does not specify how Picciolini passed them off as his own (e.g., by repeating them publicly or publishing them in his memoir) or precisely what it means to 'steal' a 'story or narrative.' Without that kind of specificity, it is impossible to verify whether or not the statement is true. The same goes for McAleer's statement that Picciolini "stole 'Life After Hate' from him." It's not clear from the context what exactly McAleer says Picciolini stole—he could be talking about an idea, a brand name, a website, an organization, or a group of people. This sort of imprecise statement, without more, cannot be verified and so it is not actionable." (Dkt. 121 at 22-23). The Picciolini Defendants focus on this dismissal in their reply, but the Third-Party Defendants do not move to dismiss these re-pled claims.

(Dkt. 142 at 15). The Court agrees that this claim should be dismissed. In the earlier Motion to Dismiss, the Court stated that this language, in context, "is not a verifiable fact, and it is the sort of 'exaggerated, figurative, and hyperbolic speech' that the First Amendment protects." (Dkt. 121 at 23 (citing *Coughlan*, 984 N.E.2d at 145)). However, the Court failed to explicitly include that this language was dismissed in its summary of Count IX or in the conclusion. The Court now states that this specific claim against Rangel is dismissed as it is nonactionable language and Picciolini has done nothing to fix the claim from its past deficiencies. The Court notes that Picciolini has re-pled the claims towards McAleer with more detail, but that the third-party defendants do not move to dismiss these claims again. (*See* Dkt. 128 at ¶¶ 139-142). The Court grants the Motion to Dismiss with regards to third-party defendant Rangel for his statement that he would "kick Picciolini's ass" as it was loose, figurative language that is not actionable.

**g. Deceptive Trade Practices (Count IX)**

The Picciolini Defendants have re-pled their Deceptive Trade Practices claim. As before, the claim must be dismissed because in order to bring a claim under the Illinois Uniform Deceptive Trade Practices Act, the Picciolini Defendants "must demonstrate that 'the circumstances that relate to the disputed [conduct] occur[red] primarily and substantially in Illinois.'" *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 860 (N.D. Ill. 2011) (quoting *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005)). To determine whether the alleged conduct occurred "primarily and substantially in Illinois," courts can consider the following

factors: "(i) [the] plaintiff's residence, (ii) where the deception occurred, (iii) where the damage to plaintiff occurred, and (iv) whether plaintiff communicated with defendants or its agents in Illinois"). *Id.* (citation omitted). "If a plaintiff cannot make this showing because events were centered outside Illinois, then [he] must rely on some other state's law." *Id.* (citation and internal quotation marks omitted).

As before, some of the deception alleged in the Complaint (i.e., the disparaging remarks) took place in Portland, Oregon. To the extent the claim relies on the disparaging remarks, the claim is dismissed for the reasons discussed in the Motion to Dismiss. (Dkt. 121 at 25). The Picciolini Defendants state that some of the deception occurred using the Picciolini Copyrights and Picciolini Videos and by concealment of his departure, donors have made contributions to LAH under false pretenses. (Dkt. 128 at ¶ 157). To the extent that the claim relies upon the Picciolini Copyrights, the claim is preempted. That leaves the Fund Raising Video. As before, the Picciolini Defendants have not pled sufficient facts. The Court was very clear that in the first Amended Complaint, Picciolini "does not allege any facts about how the remarks damaged him in Illinois specifically, nor, for that matter, does he make any non-conclusory allegations about how the remarks damaged him at all. He merely alleges that he "has been damaged by such deceptive trade practices," and there are no factual allegations to demonstrate where or how he was damaged." (Dkt. 121 at 25).

The Picciolini Defendants have not added any further detail to his complaint about how, specifically, they were damaged in Illinois. In their reply, the Picciolini

Defendants state "the deception causing this confusion occurred in Illinois by way of LAH's publication of the videos, primarily the Fund Raising Video, on its website and its YouTube Channel, directly impacting all viewers in Illinois." (Dkt. 153 at 13). No matter that the Picciolini Defendants did not plead this fact, this does not come close to meeting the "primarily and substantially in Illinois" standard that is discussed above. Picciolini does not allege how this impacts him in Illinois more so than in any other state. For this reason, Count IX is dismissed.

**CONCLUSION**

For the reasons stated here, the motion to dismiss [Dkt. 142] is granted in part and denied in part. Counts Two, Four, Six, Seven, and Eight are dismissed with prejudice. Count Nine is dismissed as to third-party defendant Rangel for his statements that he was going to "kick Picciolini's ass." The motion is denied as to Count Three and the remainder of Count Nine.

Entered: April 16, 2020

Hon. Virginia M. Kendall
United States District Judge