IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE AFTER HATE, INC., a/k/a EXIT USA, ) <br> ) <br> *Plaintiff/Counter-Defendant*, ) <br> v. ) <br> ) <br> FREE RADICALS PROJECT, INC., and ) <br> CHRISTIAN PICCIOLINI, ) <br> ) <br> *Defendants/Counter-Plaintiffs*. ) <br> _____) <br> ) <br> CHRISTIAN PICCIOLINI, ) <br> ) <br> *Third-Party Plaintiff*, ) <br> v. ) <br> ) <br> TONY MCALEER, SAMMY RANGEL, ) <br> ANGELA KING and FRANK MEEINK, ) <br> ) <br> *Third-Party Defendants*. ) <br> ) <br> ) | No. 18 C 6967 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM DISPOSITION AND ORDER**

Before the Court is Plaintiff Life After Hate a/k/a EXITUSA's Motion for Discovery Sanctions. (Dkt. 174). Life After Hate claims that Defendants provided false discovery responses, gave perjured deposition testimony, and withheld important documents during expedited discovery.

Plaintiff seeks sanctions because Defendant Christian Picciolini made the following statements under oath during his deposition: (1) that he and Arno Michaelis together incorporated Life After Hate, Inc. as a Wisconsin entity (a factual statement made to support his claim that he owned the LIFE AFTER HATE trademark); (2) that he solely created certain trademark taglines and logo designs used by Plaintiff (a factual statement made to support his claim that he owned

1

the trademark taglines and logos); (3) that he did not remember redirecting the domain www.exitusa.org to Defendant Free Radical Project's ("FRP") website www.freeradicalsproject.org (a factual statement that helped him avoid admitting he engaged in willful infringement); (4) that Defendant FRP did not use any YouTube pages (a factual statement that helped him avoid admitting that FRP infringed on Plaintiff's mark by using YouTube for infringing content and redirecting YouTube users to Defendant FRP); and (5) that Plaintiff did not sell Arno Michaelis' book and receive profits from it (a factual statement to support his claim that officers individually owned assets separate from Plaintiff). (Dkt. 174 at 8-9; Dkt. 203 at 7).

These statements were later contradicted by his testimony at the preliminary injunction hearing. Instead, Picciolini, under oath, stated the exact opposite of each statement in his deposition: First, Picciolini stated during his deposition that he formed the Wisconsin Life After Hate, Inc. entity with Arno Michaelis (Dkt. 71-29 at 28: 06-09). However, the Court found that that "Michaelis and two others, Robert T. Hasselkus and Jeff Pearcy, formed a Wisconsin nonstock corporation called Life After Hate, Inc." in 2010 and that Picciolini did not form the entity based upon the Preliminary Injunction hearing testimony. (Dkt. No. 137 at 4). Second, during his deposition, Picciolini stated he was the independent and solo creator of the tagline "No Judgment, Just Help." (Dkt. 71-29 at 125:2—9). However, he then testified that a third-party marketing company called Gravity Tank ultimately created the "No Judgment. Just Help." tagline at the Preliminary Injunction hearing. (*See* Hr'g Tr. vol. 2, 360-61:24-16.3). Third, during his deposition, Picciolini stated he did not remember ever redirecting the domain www.exitusa.org to www.freereadicals.org. (Dkt. 71-29 at 176-77). During his hearing testimony, however, he testified that he redirected the domain www.exitusa.org to www.freereadicals.org, explaining he did so because he believed the domain name to be his property. (*See* Hr'g Tr. vol. 2, 255:14-17).

Fourth, during his deposition, Picciolini stated that Free Radicals Project Inc. did not use any YouTube Pages. (Dkt. 71-29. 130:7-10). He later testified that he uploaded a video on YouTube for Free Radicals Project, Inc. (Hr'g Tr. vol. 1, 227:22-228:24). Fifth, during his deposition, Picciolini stated that Life After Hate, Inc. did not profit off of any of Michaelis's book (Dkt. 71-29 at 45: 1-6), but then he testified that Life After Hate, Inc. did receive money from Michaelis's book. (*See* Hr'g Tr. vol. 1, 186:03-09).

Further, Plaintiff served multiple Requests for Admission ("RFA") on Picciolini whose answers were later contradicted by Picciolini during his deposition and Preliminary Injunction testimony.

- RFA No. 2: Picciolini denied that he served as Director of Life After Hate, Inc. from August of 2011 to November of 2012, but then later admitted this during his hearing testimony. (Hr'g Tr. vol. 2, 279:20-280:03).

- RFA No. 3: Picciolini denied that he was the Executive Board Chair of Life After Hate, Inc. from November 2012 to Spring of 2015, but then admitted this during his deposition testimony. (Dkt. 71-29 at 62:05-12; 259:20-260:05).

- RFA No. 5: Picciolini also stated he was the "program director [of ExitUSA] from time ExitUSA concept began," but then later admitted he was only made Program Director after he stepped down from Life After Hate, Inc.'s Board in April of 2017. (Hr'g Tr. vol. 2, 280:12-13).

- RFA No. 6: Picciolini denied that Plaintiff paid for the domain name, but then admitted this during his hearing testimony that Plaintiff did pay $500 for it. (Hr'g Tr. vol. 1, 193-98; Dkt. 137 at 6-7).

- RFA No. 11: Picciolini denied that he redirected the domain name to www.freeradicals.org for several months but then admitted to this redirection. (*See* Hr'g Tr. vol. 2, 255:14-17).

- RFA No. 29: Additionally, Picciolini denied that Plaintiff suspended him as Program Director of ExitUSA in 2017, but then admitted this during his hearing testimony. (Hr'g Tr. vol. 2, 281:12).

- RFA No. 30: Picciolini denied that he was terminated from his position as Program Director of ExitUSA and then from Plaintiff at the end of August of 2017, but then admitted this during his hearing testimony. (Hr'g Tr. vol. 2, 281:12-14; Hr'g Tr. vol. 1, 222:02)

- RFA No. 39: Picciolini denied that he was an officer of Plaintiff when he transferred the domain name from Life After Hate, Inc.'s GoDaddy account to his personal account, but then admitted this. (Hr'g Tr. vol. 1, 220:20-23).

- RFA No. 42: Picciolini denied that he promised he would return control of the www.exitusa.org domain to Life After Hate, Inc. after he resigned from Life After Hate, Inc.'s Board in April of 2017, but then admitted this during his hearing testimony. (Hr'g Tr. vol. 1, 221:21-25).

- RFA No. 45: Picciolini denied that Free Radicals Project Inc. provides services in the same areas as Plaintiff, but then admitted to providing services in the same area as Plaintiff this during his deposition. (*See* Dkt. 71-29 at 207:18-208:08).

Defendant Free Radicals Project also provided answers to its RFAs which were contradicted by Picciolini's deposition testimony and other testimony given at the Preliminary Injunction hearing.

- RFA No. 8: FRP denied that it advertised educational and social services on its website, but then admitted that it promotes educational and social services on its website www.freeradicals.org. (71-29 at 207:18-208:08).

- RFA No. 12: FRP denied that it had controlled the ww.exitusa.org domain name since at least May of 2018, but then admitted that its Principal and CEO had control over the domain name since 2016, and that he redirected the domain name to Defendant FRP's website. (Hr'g Tr. vol. 1, 220:20-23; Hr'g Tr. vol. 3, 466:14-25).

- RFA No. 14: FRP denied that it ever held itself out as the company formally known as "ExitUSA," but then admitted that its Principal and CEO operated the @exitusateam and changed the name of the handle to read "ExitUSA is now@FreeRadicalsOrg" and that he caused the www.exitusa.org domain name to www.freeradicals.com. (Hr'g Tr. vol. 1, 257:17- 258: 19; Hr'g Tr. vol. 3, 466:14-25).

- RFA No. 15: FRP denied that it "used the term 'ExitUSA' on its social media," but then admitted to using the Twitter handle @exitusateam and changing the Twitter handle to state "ExitUSA is now @FreeRadicalsOrg." (Hr'g Tr. vol. 1, 227:22-228:24).

Additionally, Plaintiff claims that Defendants knowingly provided incomplete, evasive or false responses in response to Plaintiff's Interrogatories Nos. 1, 2, 4, and 5 (to Defendant Picciolini) and Plaintiff's Interrogatories Nos. 5 and 6 (to Defendant FRP). (Dkt. 174 at 6-7; Dkt.

5

203 at 12-13). Plaintiff claims that FRP intentionally withheld documents and other production responsive to Plaintiff's Requests for Productions Nos. 4, 6, 8, 10, 11, which requested documents relating to Defendants' services, advertising, fundraising, and social media access. (Dkt. 174 at 9). Additionally, Picciolini withheld production responsive to Plaintiff's Request for Production No. 8, failed to provide a good-faith response to Plaintiff's Interrogatory No. 4, and did not provide responsive answers to Plaintiff's Requests for Admission Nos. 13, 18, and 47. (Dkt. 174 at 9-10).

Lastly, Plaintiff claims that Defendants engaged in other deliberately disruptive and dilatory conduct including: (1) demanding expedited discovery when they had no interest in participating in it in good faith solely to increase the cost of litigation; (2) pushing bad-faith arguments regarding the scope of expedited discovery and forcing Plaintiff to file a Protective Order; (3) noticing up six separate depositions and demanding that each deponent (all of whom resided in different States and countries) travel to Defendants counsel's Chicago office for the depositions; (4) attempting to move the preliminary injunction hearing; (5) not showing up for a deposition; (6) withholding extensive discovery thereby forcing Plaintiff to file two Motions to Compel to obtain a bare minimum of discovery; (7) failing to respond to several discovery requests with anything but boilerplate objections; and (8) failing to correct any of their several incorrect discovery responses to date. (Dkt. 203 at 13-14).

In response, Defendants claim that Plaintiff's motion is untimely, that their responses to Plaintiff's Request to Admit were of "no substantial import" and were "harmless" errors, that their denials to the Requests for Production were proper, and that they complied with subsequent Motions to Compel. (Dkt. 201 at 1-10). Finally, Defendants argue the discrepancies between Picciolini's deposition testimony and Preliminary Injunction hearing testimony do not constitute a

basis for sanctions because Picciolini failed to remember certain information at his deposition and his testimony at the hearing supplemented his deposition. (*Id.* at 10-11).

First, there is nothing in the record to reflect that Plaintiff's motion is untimely. In fact, a motion for sanctions is always a motion that the Court may entertain to maintain the integrity of the litigation process. *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993) (district courts have inherent power to sanction not governed by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of case) (citation omitted). Plaintiff has appropriately complied with Local Rule 37.2, which states:

> …[T]his court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement that: 1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein.

L.R. 37.2. Plaintiff and Defendants' counsel participated in a LR 37.2 meet and confer telephone conference and engaged in several related discovery communications. (See Dkt. 203 at 2). Local Rule 37.2 "attempts to weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for disputes that truly cannot." *See, e.g. Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 2017 WL 3922175, *4 (N.D. Ill. Sept. 7, 2017) (citing *Chamberlain Grp. v. Lear Corp.*, 2010 WL 2836975, at *1 (N.D. Ill. July 15, 2010) ("Each hour needlessly spent on a dispute is an hour squandered." (citations omitted)). Defendant cites to no support that there need be multiple Rule 37.2 statements, and the Court cannot find law to support this proposition.

Defendants claim that Plaintiff's motion is untimely because Plaintiff requested sanctions it its two prior Motions to Compel is likewise incorrect. (Dkt. 46, 64). Defendants claim that Magistrate Judge Cole "did not find sanctions to be appropriate," and that LAH did not file objections to his rulings within the 14-day time limit for review as considered under FRCP 72(a). (Dkt. 201 at 4). This is a gross mischaracterization of what Judge Cole ruled during the Motions to Compel. Judge Cole declined to rule on whether Defendants withheld information, stating: "Alleged 'proof' of claimed lies in answering requests to admit does not warrant the relief presently sought by the plaintiff, but rather is a matter for hearing on sanction" and that "this is neither a trial nor a motion for fees or sanctions or for substantive relief." (Dkt. 66). Defendants then appropriately filed their motions for sanctions before this Court.

District courts have inherent authority to sanction parties that have "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015). Courts may exercise this authority "not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009). The sanction imposed should be proportionate to the gravity of the offense. *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir.2003). Sanctions issued under the Court's inherent authority can range from an admonishment, to the award of attorneys' fees, to the outright dismissal of an action. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Courts have ordered outright dismissal as a sanction for a variety of litigation misconduct. *See, e.g. Ramirez v. T&H Lemon, Inc.*, 845 F.3d 772 (affirming outright dismissal of a case in which the plaintiff paid a witness in exchange for favorable testimony); *Ridge Chrysler Jeep LLC v. Dahmler Chrysler Financial Services Americas LLC*, 516 F.3d 623 2008 (affirming dismissal of case as sanction

where Plaintiff deceived district court judge in order to obtain an order worth $.5 million, destroyed evidence and abused federal court's process; *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F.Supp.3d 896 (N.D. Ill. 2017) (granting outright dismissal of a counterclaim where the defendants had fabricated an email that purportedly altered the terms of the parties' contractual relationship and then used the fabricated email in the litigation). However, outright dismissal is a "particularly severe sanction," so it must be exercised with "restraint and discretion." *Chambers*, 501 U.S. at 44–45.

Defendants here have engaged in poor sportsmanship. They withheld information, gave false or misleading responses, and contradicted themselves repeatedly. Although dismissal is unwarranted here because Defendants' conduct does not rise to the level where dismissal has been granted, Defendants' excuses are unacceptable. Defendants have engaged in a pattern of deceptive behavior intended to harm Plaintiff. Of greatest concern for the Court is that Picciolini gave contradictory testimony during his deposition and the Preliminary Injunction hearing. In the federal criminal context, perjury is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory" and courts in civil cases have looked to this definition as well. *Montano v. City of Chicago*, 535 F.3d 558, 565 (7th Cir. 2008) (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (discussing whether plaintiffs committed perjury when inconsistencies arose between deposition and trial testimony). Defendants claim that this was a mere issue of needing to refresh Picciolini's memory, however, this raises the question of why counsel did not see fit to refresh Picciolini's memory prior to his deposition under oath. Defendants also claim that Picciolini's responses were supplementary. They were not. As discussed above, they were outright contradictory. They were also facts of the sort that Picciolini had direct knowledge of and were

9

responses to questions that were straightforwardly phrased according to the transcript. They were likely not "the prototypical products of confusion, mistake, or faulty memory." *Montano*, 535 F.3d at 565) (internal citations omitted). Defendants repeatedly excuse their poor behavior by arguing that these discrepancies are harmless. To the extent that Plaintiff prevailed on their Preliminary Injunction, they were not harmed. But Defendants numerous violations harms the Court's desire for an efficient and honest discovery process. *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003) (power to sanction is governed by the necessary control courts must have over their dockets).

Perhaps the Court would be more lenient if Defendants only had one or two harmless discrepancies. But Plaintiffs point to an escalating number of discovery violations and conflicts between responses given in depositions, Interrogatories, Requests for Productions, and Requests to Admit that indicate bad faith. In determining the appropriate sanction, we "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011). Contrary to what Defendants claim, many of the issues pertain to the heart of the case and there is simply no excuse for not being forthright. For example, one of Defendants main defenses is that Picciolini owned Plaintiff's trademarks and logo designs because he designed them when he was an "unpaid volunteer." But Picciolini denied Requests to Admit pertaining to his role as an officer, which, of course, he then later admitted he held official roles with Plaintiff during his Preliminary Injunction hearing testimony. (Dkt. 203-3 at 3). While Defendants argue that Picciolini's contradictory testimony is harmless and that Plaintiff's suffered no harm as they prevailed on the Preliminary Injunction, "[o]ur entire civil justice system is dependent on accurate and truthful discovery" and the "importance of accurate and truthful discovery to the civil justice

system cannot be overstated." *Dotson v. Bravo*, 202 F.R.D. 559, 570 (N.D. Ill. 2001), *aff'd*, 321 F.3d 663 (7th Cir. 2003) (citing *Quela v. Payco–General American Credits, Inc.*, 2000 WL 656681 * 6 (N.D. Ill. Mar. 26, 2000)).

It is clear Defendants have "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease*, 800 F.3d at 401. Therefore, the Court grants Plaintiff's Motion for Sanctions [Dkt. 174] and imposes a sanction of $10,832.50 to pay for the attorneys' fees related to drafting, filing and arguing Plaintiff's two motions to compel and drafting and filing its instant motion.

_____
Virginia M. Kendall
United States District Judge

Date: October 1, 2020